**SPENCER WILSON**

          **Plaintiff,**

     **-v-**           **1:16-CV-77**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

++++++++++++++++++++++++++++++++++++++++++++++++++++

APPEARANCES:

Lewis B. Insler, Esq.
Law Offices of Lewis B. Insler
17 Newcomb Place
White Plains, NY 10606
Attorney for Plaintiff

Graham Morrison, Esq.
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278
Attorney for Defendant

**Hon. Norman A. Mordue, Senior District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

On January 31, 2013, plaintiff protectively filed an application for disability insurance benefits, alleging an onset date of June 18, 2012. The application was initially denied on June 28, 2013. Thereafter, plaintiff filed a request for a hearing, and a hearing was held on April 15, 2014. Administrative Law Judge Vincent M. Cascio issued an unfavorable determination on the claim. The Appeals Council denied plaintiff's request for review. Plaintiff brought an action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, asking the court to reverse the Commissioner's

decision to deny her application for disability benefits.

Presently before the court are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 8, 11). For the reasons set forth below, the court concludes that the matter should be remanded.

**DISCUSSION**

**A.     Legal Standard**

The Social Security Act authorizes payment of disability insurance benefits or SSI benefits to individuals with "disabilities." To be considered disabled, a plaintiff must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1832c(a)(3)(A). The Commissioner uses a five-step process to evaluate disability insurance and SSI disability claims:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

**B.      ALJ's Decision**

First, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 15). The ALJ then concluded that plaintiff's post-traumatic stress disorder, alcohol dependence, right shoulder tendinopathy and degenerative joint disease; mild right biceps tendinopathy; multilevel degenerative changes in the cervical spine with foraminal stenosis especially at C5-6; status-post anterior cervical discectomy and fusion at the C5-C7 level of the cervical spine with screws and plating; and carpal tunnel syndrome of the right wrist were severe impairments. With respect to plaintiff's physical impairments, the ALJ discussed listings 1.02 and 1.04 and determined that plaintiff's impairments did not meet or medically equal the listings. (Tr. 15-16). The ALJ then considered whether plaintiff's mental impairment met or medically equaled the criteria of listing 12.04, 12.06, or 12.09, concluding that they did not. (Tr. 16-17).

Next, the ALJ discussed the evidence and determined that plaintiff has the residual functional capacity to

> perform light work . . . except [he] is never able to climb ropes, ladders or scaffolds; he is limited to no more than occasional climbing of ramps or stairs; he is limited to no more than occasional stooping or kneeling; he is limited to no more than occasional reaching, including overhead reaching, with the right dominant upper extremity: he is limited to frequent handling and fingering with the right dominant wrist and hand; he should do no more than frequent rotation, flexion, or extension of the neck; he cannot tolerate exposure to unprotected heights or hazardous machinery: he can only remember and carry out simple, unskilled work related

-3-

> tasks with only occasional interaction with the public, coworkers
> and supervisors; however, [he] is able to make independent
> judgments on simple work related decisions.

(Tr. 17).

The ALJ explained that plaintiff alleged that he has difficulty lifting objects, walking, standing, sitting, climbing stairs, kneeling, squatting, reaching, and using his hands, and had to stop working due to his conditions. (Tr. 18). The ALJ further stated that plaintiff claimed that he rarely socializes and tends not to trust others, that he has difficulty paying attention and cannot follow written instructions. The ALJ noted, however, that plaintiff was able to drive himself to the hearing, and recently drove to Utah, and that he testified to socializing more than previously alleged. (Tr. 18).

The ALJ concluded that the medical evidence did not fully support plaintiff's allegations. In this regard, the ALJ referenced a June 19, 2012 visit to the emergency room where plaintiff complained of pain in his neck radiating into his right arm, explaining that he injured himself in 2009 but was able to return to work following physical therapy and conservative treatment. He was diagnosed with exacerbation of a chronic cervical strain with radiculopathy. (Tr. 18). The ALJ also referenced a June 25, 2012 orthopedic examination with Dr. Stephen Maurer where plaintiff explained that he was jackhammering in April and started feeling pain in his neck and right shoulder. Dr. Mauer found no lack of strength in plaintiff's upper extremities. The ALJ also pointed to a July 2012 MRI of plaintiff's cervical spine that showed degenerative changes and stenosis, but no disc herniations or nerve root involvement. An October 19, 2012 MRI of plaintiff's right shoulder showed only mild abnormalities and revealed no evidence of a rotator cuff tear. According to the ALJ, this evidence shows that while plaintiff has orthopedic impairments, the objective and clinical evidence does not support his allegations that they

-4-

preclude him from working full-time.

The ALJ then outlined plaintiff's additional treatment history for his physical impairments. The ALJ discussed a November 2012 visit to Dr. Samant Virk where plaintiff's pain persisted and physical therapy had not helped. Dr. Virk administered an injection into plaintiff's neck, but on December 3, 2012, plaintiff continued to complain of neck and arm pain. On February 19, 2013 plaintiff elected to undergo anterior cervical discectomy and fusion at the C5-6 level. (Tr. 18-19). In March 2013, plaintiff complained of neck pain radiating into his right arm at the emergency room, but imaging showed "no abnormalities other than the fusion." (Tr. 19). In May 2013, Dr. Perkins, who performed the surgery, recommended that plaintiff continue to attend physical therapy and otherwise treated his condition conservatively. (Tr. 19). The ALJ noted that a July 2013 MRI of plaintiff's cervical spine showed a solid fusion and mild degenerative disc disease, and on August 21, 2013, Dr. Perkins recommended that plaintiff stop taking prescription pain medication and continue attending physical therapy. (Tr. 19). The ALJ also discussed a consultative orthopedic examination performed by Dr. Corvalan, who opined that plaintiff had moderate to marked limitations in moving his neck backward, forward, or laterally. The ALJ assigned this opinion limited weight because the opinion was made only two months after the fusion surgery, and therefore was too close in time to be probative. (Tr. 19). The ALJ gave the opinions of 100% disability for plaintiff's worker's compensation claim limited weight as they were on an issue reserved to the commissioner, substantial medical evidence showed that plaintiff was not 100% disabled, and claims for worker's compensation use different standards and rules than the Social Security Administration. (Tr. 19-20).

The ALJ also outlined plaintiff's treatment history with respect to his mental impairments.

-5-

The ALJ explained that plaintiff has a long history of treatment for PTSD, but that after treatment he was able to work. (Tr. 19). Plaintiff attended a consultative psychological examination with Dr. Claude Schicuderer on May 20, 2013, where plaintiff reported that therapy had helped him immensely. At a June 18, 2013 treatment visit, medical professionals found no deficits in plaintiff's motor or neurological functioning. The ALJ referenced a June 2013 psychotherapy session with Dr. Dale Vangaasbeek where plaintiff stated that his orthopedic doctor told him he could not return to work for three weeks and expressed worry that he might lose his job. The ALJ determined that this shows that "despite his conditions, [he] is capable of working in some capacity; and he has expressed this to his mental health providers who had no concerns about him returning to work." (Tr. 19). The ALJ further explained that at a November 2013 visit plaintiff reported that he was doing well on his medication regimen, and that while there was an increase in plaintiff's symptoms in March 2014, it was situational, and that between November 2013 and March 2014 he reported doing well. Dr. Vangaasbeek completed a form regarding plaintiff's mental residual functional capacity on September 13, 2013. He opined that plaintiff had marked limitations in his ability to understand, remember, and carry out complex tasks, that plaintiff has marked limitations in his ability to make complex work-related judgments, and marked to extreme limitations in social functioning. The ALJ assigned this opinion very little weight, concluding that it was inconsistent with his own treatment notes and the medical evidence of record documenting previous successful treatment that allowed plaintiff to return to work. (Tr. 20).

Next, the ALJ found that plaintiff was unable to perform his past relevant work, but, after consulting a vocational expert, concluded that, considering his age, education, work experience,

and residual functional capacity, he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Therefore, the ALJ determined that a finding of "not disabled" was appropriate. (Tr. 21).

**C.     Issues In Contention**

Plaintiff argues that: 1) the ALJ erred in evaluating the evidence and in improperly determining plaintiff's residual functional capacity; 2) the Appeals Council failed to properly consider the additional evidence; and 3) the ALJ failed to properly evaluate plaintiff's credibility.

**D.     Analysis**

1.     RFC Determination

A plaintiff's RFC is the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citation omitted). In determining RFC, the ALJ can consider a variety of factors, including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments. 20 C.F.R. § 404.1545(a).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004);

*Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. See 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

As discussed above, here, the ALJ found that plaintiff was able to perform "light work" with certain additional limitations. Light work requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

Here, the Court concludes that the ALJ's decision failed to provide an adequate analysis of how the evidence in the record supported the determination that Plaintiff could perform light work. It is true that the ALJ's conclusion need not "perfectly correspond with any of the medical

-8-

sources cited" and he is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Likewise, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion" where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (citation omitted). However, although the ALJ outlines the medical evidence in the record, it is unclear how the medical evidence he discusses supports an ability to perform the functions required for performance of light work. Additionally, with respect to the opinion evidence, the ALJ gave the opinion of Dr. Corvalan, the orthopedic consultative examiner, limited weight, and also gave limited weight to the worker's compensation sources that opined plaintiff was 100% disabled. Therefore, it is clear that the ALJ did not rely on these opinions in determining that plaintiff could perform light work. What is not clear is what evidence the ALJ did rely on in making this determination. Although in defendant's brief, the Commissioner attempts to find support in the record for the ALJ's determination, this Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. Dec. 14, 2009). On remand, the ALJ should evaluate the evidence and clarify how the evidence of record supports the RFC determination.

With respect to the ALJ's determination as to plaintiff's mental RFC, the Court similarly determines that the ALJ should revisit this finding on remand. The Court agrees with plaintiff that the ALJ's rationale for affording Dr. Vangaasbeek's opinion "very little weight" should be clarified. Although the ALJ concludes that the opinion is inconsistent with Dr. Vangaasbeek's

-9-

own treatment notes, the only note he points to is a statement that plaintiff "does well on medication." The notes are very brief, and largely repetitive, indeed most follow the general form: "I met for 30 minutes with this Veteran with post-traumatic stress disorder. Mental status was stable. Suicide risk assessment was reviewed and the Vet remains at a minimal level of risk" with an additional sentence or two at the end noting briefly what they discussed, for example "[w]e discussed issues regarding the Vet's struggles to recover from spinal surgery." (*See, e.g.,* Tr. 345). It is unclear to the Court how the ALJ's review of these treatment notes led to the conclusion that they are inconsistent with Dr. Vangaasbeek's opinion regarding plaintiff's mental residual functional capacity. Indeed, in one note, Dr. Vangaasbeek states, regarding plaintiff's "struggles to acquire social security disability," "he should prevail given his spinal injury, chronic pain, and the duration and intensity of his posttraumatic stress disorder." (Tr. 488). Certainly the ALJ was not requited to adopt this ultimate conclusion on the issue of disability, but it does demonstrate in a treatment note that Dr. Vangaasbeek feels plaintiff is not doing as well on medication as the ALJ concluded based on Dr. Vangaasbeek's treatment notes. To be clear, the Court is not suggesting that the ALJ is required to assign greater weight to Dr. Vangaasbeek's opinion on remand, so long as it is clear why the opinion is given the weight it is given, and that the decision is supported by substantial evidence.

2. Appeals Council

"While evidence submitted to the Appeals Council becomes part of the administrative record, *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996), the Appeals Council . . . will consider new evidence only if (1) the evidence is material, (2) the evidence relates to the period on or before the ALJ's hearing decision, and (3) the Appeals Council finds that the ALJ's decision is contrary to

-10-

the weight of the evidence, including the new evidence." *Rutkowski v. Astrue*, 368 F. App'x 226, 229 (2d Cir. 2010); 20 C.F.R. §§ 404.970(b), 404.976(b), 416.1470(b), 416.1476(b); *see also Baladi v. Barnhart*, 33 F. App'x 562, 564 (2d Cir. 2002) (new evidence forms part of the administrative record under review "only to the extent that it relates to the time frame encompassed in the ALJ's decision"). Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). The role of the district court is to determine if the Appeals Council erred when it determined that the new evidence was insufficient to trigger review of the ALJ's decision. *Sears v. Colvin*, No. 8:12–CV–570 (MAD/ATB), 2013 WL 6506496, at *5 (N.D.N.Y. Dec. 12, 2013) (*citing Woodford v. Apfel*, 93 F. Supp. 2d 521, 528 (S.D.N.Y.2000)). If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." *Shrack v. Astrue*, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (citation omitted); *Sears v. Colvin*, 2013 WL 6506496, at *5, 7 (a sentence four remand is warranted when the Appeal Counsel failed to adequately address additional evidence that could potentially fill "significant gaps in the record ... [and could] plainly help to assure the proper disposition of a claim") (citation omitted).

An ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004). The Appeals Council is bound by the same rule. *Beck v. Colvin*, 2013 WL 5533571, at *8 (W.D.N.Y. 2013) (citing 20 C.F.R. § 416.927 (e)(3)). Here, plaintiff argues that treating physician Dr. Dentico's opinion that the Appeals Council reviewed contradicts the ALJ's RFC "in important respects." Dr. Dentico opined that

-11-

plaintiff could lift no more than 10 pounds frequently or 15 occasionally, nor could he sit or stand for greater than 10 minutes.  Dr. Dentico also opined that plaintiff could do no stooping.  The Appeals Council also had an opinion from Dr. Roffman, the adverse examiner for the worker's compensation claim who limited plaintiff to lifting or carrying 10 pounds occasionally, and a negligible amount of force frequently, and requiring that plaintiff sit "most of the time."

Though the Appeals Council found that the information "does not provide a basis for changing the Administrative Law Judge's decision," the Court concludes that there is a reasonable possibility that the ALJ would have reached a different result if the original administrative record had included these opinions. *Davidson v. Colvin*, No. 1:12-CV-316 (MAD/VEB), 2013 WL 5278670 at *5, *9 (N.D.N.Y. Sept. 18, 2013) (citing *Jones v. Sullivan*, 949 F.2d 57, 60 (2d. Cir. 1991)).  This is particularly true in light of the Court's determinations in the preceding section.  In finding that the Appeals Council erred in failing to consider these opinions, this court reaches no conclusion whether, on remand, they must be given controlling weight.

3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (*quoting Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. March 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20

C.F.R. § 416.929; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to function. 20 C.F.R. § 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 416.929(c)(3).

The Court concludes that the ALJ's credibility determination should also be revisited on remand. As plaintiff points out, the ALJ supports his statement that the record does not support plaintiff's allegations with a June 19, 2012 visit to the emergency room where plaintiff complained of pain in his neck radiating into his right arm and where he was diagnosed with exacerbation of a chronic cervical strain with radiculopathy, and a June 25, 212 orthopedic examination where plaintiff explained he was jackhammering in April and started feeling pain in

-13-

his neck and right shoulder.  It is unclear to the Court how these visits support the ALJ's conclusion regarding plaintiff's credibility.  Moreover, although the Court agrees that a car trip to Utah does, in some respects undermine plaintiff's claims regarding his inability to sit, the Court notes that plaintiff took this trip, not for vacation, but to visit his daughter who was placed in a rehabilitation facility in Utah as there was no availability in closer facilities.  Additionally, despite the ALJ's statement that plaintiff's mental health providers "had no concerns about him returning to work," the Court notes that the treatment note referenced by the ALJ simply states: "We continued to discuss issues regarding the Vet's recovery from spinal surgery.  His doctor has said that he cannot return to work for another 3 months, and he is concerned that he may lose his job," rather than expressing an opinion about whether Dr. Vangaasbeek has concerns about him returning to work.  (Tr. 344).  Indeed, this visit was on June 24, 2013, and in later visits, Dr. Vangaasbeek continued to mention plaintiff being out of work without commenting that he thought plaintiff could or should return to work, (*See, e.g.,* Tr. 463 ("We discussed issues regarding the Vet being fired from his job because he has been out of work with a spinal problem for over a year.")), and even stated that "he should prevail [at his social security hearing] given his spinal injury, chronic pain, and the duration and intensity of his posttraumatic stress disorder."  (Tr. 488).  On remand, the ALJ should re-assess plaintiff's credibility considering the factors outlined above.

5. Step Five Determination

Because remand is recommended for the reasons discussed above, remand is also recommended for a new analysis at step five.

**CONCLUSION**

-14-

For these reasons, it is therefore

ORDERED that the Commissioner's motion for judgment on the pleadings (Dkt. No. 8) is DENIED; and it is further

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is GRANTED; and it is further

ORDERED that the Commissioner's decision is reversed and this matter is remanded; and it is further

ORDERED that the Clerk of the Court is directed to enter judgment for plaintiff.

IT IS SO ORDERED.

Date:   March 30, 2017

*Norman A. Mordue*
Norman A. Mordue
Senior U.S. District Judge